UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DUSTIN E. MCGUIRE,

           Plaintiff,

v.                                        CAUSE NO. 3:18-CV-197-DRL-MGG

JEREMY DYKSTRA *et al.*,

           Defendants.

## OPINION & ORDER

Dustin E. McGuire, a prisoner without a lawyer, was granted leave to proceed on an Eighth Amendment claim against Captain Jeremy Dykstra, Officer Sara Abbassi, Officer Promise Blakely, and Officer Justin Rodriguez in their individual capacities for denying necessary medical care following Mr. McGuire's inhalation of smoke while housed at the Indiana State Prison on April 7, 2017. Three defendants, Jeremy Dykstra, Officer Sara Abbassi, and Officer Justin Rodriguez, moved for summary judgment.[1] Mr. McGuire filed a response. No reply came. Because genuine triable issues remain, the court denies the motion.

## FACTS

Mr. McGuire is an inmate at Indiana State Prison with a documented history of asthma. ECF 119-1; ECF 116-3. On April 7, 2017, around 9:45 p.m., a fire began in Joshua Devine's cell. ECF 116-1 at 1; ECF 116-2. Mr. Devine passed away due to the fire. ECF 116-2.

According to Captain Dykstra, who was monitoring the situation via camera, it "got so smoky I couldn't even tell who was on the ranges," and the fire was "shooting out the cell, probably like 5, 6 feet." ECF 116-5 at 1-2. He compared what he saw to the movies, with the fire "coming back out, like a fire-breathing dragon." *Id.* at 2. "[Y]ou could not see nothing. And there was smoke. The smoke was so thick and black, I couldn't tell who was who." *Id.*

---

[1] A default has been entered against the only other defendant, Officer Promise Blakely.

Captain Dykstra ordered that the 500 block of the cell house evacuated, but the directive was misunderstood. Instead, every cell in the cellhouse was unlocked. *Id.* at 3. This caused the simultaneous release of more than 200 offenders. *Id.* at 5. According to Captain Dykstra, this created a "[b]ad situation, that dark. The lighting -- you know, it's that smoky. Level 4 offenders, you don't know what they're going to do. Staff and offender safety. Bad situation." *Id.* at 4. The offenders were "loud; screaming, 'smoke.' You know, people want breathing treatments and everything else. Just screaming like mad men." *Id.* at 5.

Officer Statham was involved in extracting Mr. Devine from his cell. In Officer Statham's memorandum describing his role in the incident, he writes that, at approximately 10:00 p.m., he "called a signal 3000 to insure that medical was on scene once we got the offender down the stairs [but] it would not have been safe for medical to be on the range due to the danger of smoke inhalation." ECF 116-4 at 2.

Mr. McGuire was one of the inmates that sought medical care following the evacuation. He asked Officers Abbassi, Blakely, and Rodriquez if they could call medical because he has asthma, was having a difficult time breathing, and was dizzy. ECF 119-1 at 2. The officers responded by telling him that Captain Dykstra had ordered them not to call medical for anyone and that no offender was to go anywhere. *Id.* Mr. McGuire was gagging, coughing up black soot with blood in it, and wheezing. *Id.* at 3. He showed the mucus with blood in it to the officers, but they expressed that they could do nothing for him. *Id.*

Two officers were attacked during the chaos, and a third officer had to lock the door to prevent the disturbance from spreading outside the cellhouse. ECF 116-4. Later, offenders started a second fire and broke windows. ECF 116-1 at 1. It took time to restore order. After industrial fans were used to clear some of the smoke from the cellhouse, "[o]ffenders were escorted in groups of 5 back into BCH until the unit was completely secured." ECF 119-1 at 3; ECF 116-1 at 1. When it was

2

Mr. McGuire's turn to re-enter the cellhouse, he told Captain Dykstra that he was wheezing, having trouble breathing, coughing up black soot with blood in it, dizzy, and that he suffered from asthma. ECF 119-1 at 4. Mr. McGuire indicated that he could not go back in when there was still smoke, and he asked Captain Dykstra to call the medical department. *Id.* Captain Dykstra said that he was not calling because he was securing offenders, and that Mr. McGuire would be fine. *Id.*

An emergency count was called at 12:52 a.m., and count was cleared at 1:43 a.m. ECF 116-1 at 1. "[M]ed lines" were formed by 4:45 a.m. ECF 116-2. The doors were left open and fans were left on that night because of the smoke, but the cellhouse was still smoky. ECF 119-1 at 4. This further aggravated Mr. McGuire's symptoms. *Id.* Mr. McGuire had chest pain and vomiting, in addition to the dizziness, coughing, and gagging he had already reported to the defendants. *Id.* He had access to an inhaler for his asthma, but it didn't help. *Id.* at 5. And, he tried to get the attention of Officers Abbassi, Blakely, and Rodriguez, but they reportedly didn't answer and didn't walk the range. *Id.*

Mr. McGuire wasn't seen by medical personnel until April 13, 2017—six days later from when the fire started. ECF 116-3 at 2, 4. Then, Mr. McGuire presented "no shortness of breath," and "no resp. distress" was noted. *Id.* Mr. McGuire's medical notes don't include any diagnosis of a lung infection or use of any antibiotic. *Id.* However, they do say that, even six days after the fire, wheezing could be heard in both his left and right lungs, and his throat was erythematous (abnormally red). *Id.* at 2. His condition was treated with a breathing treatment and prednisone. *Id.* at 4.

## STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility

3

of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

## DISCUSSION

In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). The defendants argue that summary judgment is appropriate both because Mr. McGuire did not suffer from an objectively serious medical condition and because they were not deliberately indifferent to that condition.

A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Here, the defendants argue that Mr. McGuire's medical condition was not serious while simultaneously submitting evidence that the cell house was full of thick dark smoke, that flames were shooting out five or six feet from the cell that was set on fire, and that medical staff were not called to the area right away because the smoke was so dense it would have been dangerous for them to be there. Furthermore, Mr. McGuire, who has asthma, reported symptoms that suggest he suffered from more than mere mild exposure to smoke. And, when he did finally see a doctor, albeit six days later, his condition was still serious enough that a breathing treatment was administered and prednisone was prescribed. There is a genuine dispute of fact regarding whether Mr. McGuire was suffering from a serious medical condition when he asked the defendants for medical care.

"[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). The defendants argue that they were not deliberately indifferent to prioritize restoration of order following the deadly fire and the attack on staff that occurred when 200-plus offenders were evacuated simultaneously. Emergent conditions may well factor into whether correctional officers were deliberately indifferent, *cf. Whitley v. Albers*, 475 U.S. 312, 320-21 (1986), but the evidence suggests that the immediate containment crisis (which accompanied the fire and smoke) was resolved by at least 1:43 a.m., or within about four hours. Mr. McGuire says he requested care both before and after order was restored. There is evidence before the court from

5

which a reasonable jury could conclude that Mr. McGuire's medical care was not delayed only to permit the restoration of order but was instead pushed aside altogether.

The defense argues that medical staff began examining affected offenders within hours of the fire. ECF 114 at 7; ECF 115 at 4. The evidence establishes the creation of a "med line" at around 4:45 a.m. ECF 116-2. The defendants offer no evidence regarding the purpose of the "med line," but Mr. McGuire says the "med line" was exactly what it sounds like—a line for offenders to walk through and obtain their previously prescribed medications, not a means of obtaining treatment for medical conditions related to the fire. The defendants presented no evidence to explain this "med line" any differently in reply, or to show that Mr. McGuire received treatment he needed over the course of six days. A reactionary dismissal of Mr. McGuire's pleas for medical care, in the literal heat of an evolving crisis, may not have been constitutionally indifferent, but the defendants offer no explanation for that disregard for care once the crisis had passed, at least not on this record. Accordingly, Mr. McGuire has established a triable issue on whether the defendants were deliberately indifferent.

The defendants also assert that they are entitled to qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). To overcome a qualified immunity defense, a plaintiff must show the deprivation of a constitutional right and must also "show that the right was clearly established at the time of the violation." *Id*. "A right is clearly established when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The plaintiff does not need to point to a case "on all fours" with the defendant's alleged misconduct; rather, there

6

must simply be "settled authority that would cause [the defendant] to understand the illegality of the action." *Id.* (citations omitted). In some cases, the two inquiries effectively collapse into one:

> A plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to the plaintiff's health or safety, the defendant's failure to take reasonable measures, and the defendant's subjective intent to harm or deliberate indifference. If there are genuine issues of fact concerning those elements, a defendant may not avoid trial on the grounds of qualified immunity. Likewise, if the uncontested facts reveal a fatal gap in the plaintiff's case, the defendant will win on the merits.

*Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (internal citations omitted).

Here, genuine triable issues exist as to whether Mr. McGuire was suffering from a serious medical condition and whether the defendants were deliberately indifferent to his need for medical care. Crediting Mr. McGuire's version of events, he has shown a plausible Eighth Amendment violation, and "[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) (citations omitted).

The defendants frame their qualified immunity argument in terms of the right to "immediate medical treatment for smoke inhalation following a prison fire" and again suggest that Mr. McGuire suffered only mild smoke inhalation. In other words, the defendants have, in construing the issue, focused exclusively on their version of events. Genuine factual issues remain for a reasonable jury to conclude otherwise. Thus, the defendants cannot avoid trial on grounds of qualified immunity. *See Walker*, 293 F.3d at 1037.

## CONCLUSION

For these reasons, the court DENIES the summary judgment motion (ECF 114).

SO ORDERED.

August 14, 2020                                          *s/ Damon R. Leichty*
                                                         Judge, United States District Court

7